NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEVE WESTHOFF, et al., *Plaintiffs/Appellees*,

*v.*

RENT-SELL REAL ESTATE LLC, *Defendant/Appellant*.

No. 1 CA-CV 25-0201

FILED 06-30-2026

Appeal from the Superior Court in Maricopa County
No. CV2021-006695
No. CV2023-011043
The Honorable John R. Hannah Jr., Judge (*Ret.*)

**REVERSED AND REMANDED**

COUNSEL

Glover & Associates, PLLC, Phoenix
By Michael R. Glover
*Counsel for Plaintiffs/Appellees Steve and Kymberly Westhoff*

Vial Fotheringham, LLP, Mesa
By Quinten T. Cupps
*Counsel for Plaintiff/Appellee Tonto Hills Improvement Association*

Tiffany & Bosco, P.A., Phoenix
By Lance R. Broberg, Amy D. Sells, Anthony D. Nordman
*Counsel for Defendant/Appellant*

_____

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Judge Cynthia J. Bailey joined. Presiding Judge Daniel J. Kiley dissented.

_____

**W I L L I A M S**, Judge:

¶1        This appeal arises out of a property dispute. Steve and Kymberly Westhoff and the Tonto Hills Improvement Association ("THIA") (collectively, "the Plaintiffs") sought to enforce a use restriction amendment ("the amendment") against Rent-Sell Real Estate, LLC ("Rent-Sell"). Rent-Sell contested the validity of the amendment, but the superior court found Rent-Sell's challenge time-barred and entered summary judgment and a declaratory judgment in the Plaintiffs' favor on that basis. Because the amendment did not conform to the stated procedures of the governing declaration, it is invalid and of no effect. No statute of limitations forecloses a challenge to a void amendment. Accordingly, we reverse the declaratory judgment and the underlying summary judgment rulings. We direct the superior court to grant Rent-Sell's motion for summary judgment and dismiss with prejudice the Plaintiffs' amended complaint for declaratory relief. We remand for proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2        On December 7, 1960, the Lane Title & Trust Company ("Lane Title") subdivided a large tract of land in Maricopa, Arizona into the Tonto Hills Subdivision ("the Subdivision") and recorded a plat map.

¶3        On January 23, 1961, Lane Title recorded an instrument titled the "Declaration of Restrictions" (the "January 1961 Declaration") that related to the Subdivision. The January 1961 Declaration stated that Lane Title, as trustee, owned all the premises described therein.

¶4        The January 1961 Declaration set forth various use restrictions and architectural guidelines for the development of the land in the Subdivision. Specifically, paragraph 17 of the January 1961 Declaration addressed use restrictions and did not contain any parking or driveway restrictions.

¶5        By its express terms, the January 1961 Declaration precluded any changes to the covenants and restrictions before June 5, 1980, unless

"one hundred per cent (100%) of the then record owners of all said property" agreed to such changes "in writing." Any changes to the covenants and restrictions from June 5, 1980 moving forward, however, required only the "written consent recorded, of a majority of the record owners of all lots and tracts."

¶6        Lane Title conveyed one of the lots in the Subdivision on February 3, 1961 to C.J. Warren Company, "a co-partnership," and another lot on February 14, 1961 to First National Bank in Albuquerque as "trustee." Two deeds memorializing these conveyances were recorded with the Maricopa County recorder.

¶7        After the conveyance of the two lots, a document titled "Amendment to Declaration of Restrictions" was recorded on April 20, 1961 (the "April 1961 Amendment"). The April 1961 Amendment stated that Lane Title owned all the described premises. The April 1961 Amendment purported to amend the January 1961 Declaration to add subsection (h) to paragraph 17, which, as pertinent here, provided that Tract G of the Subdivision was "particularly restricted for use as driveways and parking areas for use in connection with" lots 209 through 212.

¶8        Later amendments to the January 1961 Declaration acknowledged the recording of the April 1961 Amendment, but no subsequent amendment included subsection (h) in paragraph 17 or otherwise contained any parking or driveway restrictions. The 1988 amendment recognized the formation and registration of THIA with the Arizona Corporation Commission in 1980, as permitted by the January 1961 Declaration.

¶9        Rent-Sell now owns Tract G in the Subdivision. The Westhoffs now own lots 211 and 212 and operate Raven's View Wine Bar on that property. In 2021, an attorney for Kymberly Westhoff sent a demand letter to Rent-Sell's owner stating that Kymberly and Raven's View Wine Bar have "the unrestricted right to use Tract G for parking for their customers and staff" under the April 1961 Amendment and demanded that Rent-Sell "clear and grade" the over-grown property to make it usable for "entry, exit and parking."[1] When Rent-Sell did not comply with the demand, Steve

---

[1]        At oral argument, Rent-Sell's attorney characterized the demand letter as the first attempt by any lot owner to enforce the amendment. Counsel for the Plaintiffs, in turn, represented that the Westhoffs' predecessor-in-interest had, in fact, used Tract G for parking—use that the

Westhoff used a tractor to "scrape" a portion of Tract G. He eventually left the property after speaking with Rent-Sell's owner and law enforcement.

¶10        The Westhoffs sued Rent-Sell seeking a declaratory judgment that the April 1961 Amendment "remains in full force" and Tract G is restricted to being used as a driveway and parking area for the customers and employees of businesses operating on specified lots due to easement rights created by the April 1961 Amendment. Rent-Sell filed a counterclaim against the Westhoffs, Raven's View, LLC, and White Sands Water, LLC (a company owned by Steve Westhoff), seeking a declaratory judgment that no easement encumbers Tract G and the Westhoffs' presence on Tract G constitutes an unlawful trespass.

¶11        After the superior court granted THIA permission to join as a plaintiff, the Westhoffs and THIA filed an amended complaint for declaratory relief. Rent-Sell, in turn, filed a first amended counterclaim and first amended third-party complaint.

¶12        The Plaintiffs then moved for summary judgment, arguing the statute of limitations barred Rent-Sell from challenging the validity of the April 1961 Amendment. Rent-Sell filed a competing motion for summary judgment seeking dismissal of the Plaintiffs' amended complaint. Asserting that uncontroverted evidence showed the April 1961 Amendment did not pass with the written consent of all the owners of the affected property as required by the January 1961 Declaration, Rent-Sell argued the April 1961 Amendment is therefore null and void.

¶13        The superior court granted the Plaintiffs' motion and denied Rent-Sell's motion. In so doing, the court found the statute of limitations for challenging the April 1961 Amendment had run and, "[a]s a result, the April 1961 Amendment is in force."

¶14        After a trial addressing the continuing validity of the April 1961 Amendment—given the omission of any parking and driveway restrictions in the 1988 amendment—the superior court entered a final judgment declaring the April 1961 Amendment "is valid and enforceable,

Westhoffs had both observed and reasonably assumed they could continue upon their acquisition of lots 211 and 212. As recounted in his signed declaration, however, the Westhoffs' predecessor-in-interest, Thomas Rawles, denied making use of Tract G, stating that neither he nor anyone else "[t]o [his] knowledge, . . . ever used Tract G for parking or any other purpose."

and has not been abandoned." The court further found that Rent-Sell's failure to allow the Westhoffs to use Tract G for parking violated the April 1961 Amendment, ordered equitable remedies, and awarded the Plaintiffs their attorneys' fees.

**¶15**        We have jurisdiction over Rent-Sell's timely appeal under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶16**        Rent-Sell seeks reversal of the superior court's declaratory judgment and underlying summary judgment rulings. We review *de novo* the grant of summary judgment and the validity and enforceability of a contract. *Glazer v. State*, 237 Ariz. 160, 167, ¶ 29 (2015); *Armiros v. Rohr*, 243 Ariz. 600, 605, ¶ 16 (App. 2018). The court must grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a).

**¶17**        The party moving for summary judgment has the initial burden to establish no genuine issue of material fact exists, and a defendant may do so by specific reference to the record demonstrating no evidence exists to support an element of a claim. *Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990) (explaining "the movant need not affirmatively establish the negative of the element"); *Mohave Elec. Co-op., Inc. v. Byers*, 189 Ariz. 292, 303 (App. 1997) (stating "[a] defendant can obtain summary judgment when the plaintiff is unprepared to establish a *prima facie* case"). When the movant makes a *prima facie* showing of the absence of a genuine issue of material fact, the non-movant must show specific facts creating a genuine issue for trial by competent evidence. *Orme Sch.*, 166 Ariz. at 310.

## I.    The Statute of Limitations Did Not Preclude Rent-Sell from Challenging the Validity of the April 1961 Amendment.

**¶18**        Rent-Sell argues the superior court erred in determining, as a matter of law, its challenge to the validity of the April 1961 Amendment was time-barred. The Plaintiffs, for their part, maintain that the six-year statute of limitations for contract actions precluded Rent-Sell's challenge.

**¶19**        "Amendments [to restrictions] which are not properly executed *never become effective.*" *La Esperanza Townhome Ass'n, Inc. v. Title Sec. Agency of Ariz.*, 142 Ariz. 235, 239 (App. 1984) (emphasis added). Indeed, the subsequent purchase of a property subject to a void amendment *does not* "operate to validate [the] document that never took effect." *Id.*

Thus, an amendment that is invalid and void "cannot be confirmed or ratified by the running of the statute of limitations," *Raimey v. Ditsworth*, 227 Ariz. 552, 558, ¶ 16 (App. 2011) (noting party's failure to cite any authority to support "the proposition that a statute of limitations restricts a lot owner's ability to seek a determination that a particular restrictive covenant is unenforceable"), and the illegality, voidness, or invalidity of a contract may be raised by the parties or by the court *sua sponte*, even for the first time on appeal, *see Mitchell v. Am. Sav. & Loan Ass'n*, 122 Ariz. 138, 139–40 (App. 1979); *see also Nat'l Union Indem. Co. v. Bruce Bros.*, 44 Ariz. 454, 467-68 (1934) (noting no party can recover under a void contract).

¶20 Despite this well-established law, in this case, the superior court found that C.J. Warren Company and First National Bank in Albuquerque, lot owners at the time of the April 1961 Amendment, failed to timely object to the use restriction amendment and the statute of limitations on any breach of contract claim those parties may have had expired in 1967. The court largely based its ruling on its interpretation of *Vales v. Kings Hill Condominium Ass'n*, 211 Ariz. 561 (App. 2005), *abrogated on other grounds by Powell v. Washburn*, 211 Ariz. 553 (2006).

¶21 In *Vales*, a condominium owner sought a declaratory judgment that a "no-rental" amendment enacted by her condominium association was invalid because the amendment violated her contractual rights under the original condominium declarations. *Id.* at 563–64, ¶¶ 1–6. On review, we concluded either the four-year general statute of limitations or the six-year statute of limitations for written contracts applied, not the one-year statute of repose for challenging a recorded amendment to a condominium declaration, A.R.S. § 33-1227(B). *Id.* at 566, ¶ 17. Citing *Vales*, the superior court here applied a six-year statute of limitations to Rent-Sell's challenge to the validity of the April 1961 Amendment and found Rent-Sell's challenge time-barred.

¶22 But *Vales* is inapposite. In that case, it was the plaintiff who sought a declaration that the condominium association's amendment was invalid. *Id.* at 566, ¶ 16. We found the claim for declaratory relief was "simply a precursor" to the plaintiff's breach of contract claim, and thus the statute of limitations applied to the plaintiff's request for declaratory relief. *Id.* at 566, ¶ 17. Here, *the defendant* challenged the underlying amendment's validity in response to the Plaintiffs' summary judgment motion on its declaratory relief action. The Plaintiffs are entitled to summary judgment on their declaratory relief claim only if the underlying amendment is valid. Within this context, Rent-Sell's challenge to the amendment's validity is not, as the Plaintiffs assert, an affirmative defense, but a challenge to an

element of the Plaintiffs' claim. Further, the Plaintiffs have cited no case law, and we have found none, treating a defendant's challenge to the validity of an amendment in this context as an affirmative defense. Thus, *Vales* does not support applying a statute of limitations to such an argument.

¶23 That Rent-Sell, in turn, brought its own declaratory relief action, does not, as argued by the Westhoffs, trigger application of the statute of limitations on a breach of contract claim. As explained in *Vales*, to determine "whether and when statutes of limitations" apply to declaratory relief actions, the court must "examine the substance" of the underlying cause of action and "identify the relationship out of which the claim arises." *Id.* at 566, ¶ 17 (citation modified). Rent-Sell seeks a ruling that the Westhoffs have no easement and trespassed on Rent-Sell's property *because* the April 1961 Amendment is invalid. Rent-Sell does not bring a breach of contract claim. Its claim for declaratory relief challenging the validity of the April 1961 Amendment stems from events occurring after the Westhoffs entered Tract G in 2021 and attempted to enforce the April 1961 Amendment.

¶24 Because no statute of limitations precludes Rent-Sell from challenging the April 1961 amendment as null and void, the superior court erred by finding Rent-Sell's cause of action time-barred and granting summary judgment to the Plaintiffs on that basis.

## II. The Plaintiffs Did Not Meet Their Burden to Prove the April 1961 Amendment is Valid and Enforceable.

¶25 Rent-Sell contends the April 1961 Amendment is void for lack of mutual assent because it did not comply with the January 1961 Declaration's unanimity requirement.

¶26 Deed restrictions constitute "a contract between the subdivision's property owners as a whole and the individual lot owners." *Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448 (App. 1993). "Owners of lots within a community may modify or extinguish deed restrictions," but "the manner of making such modifications is governed by the declaration in effect." *Shamrock v. Wagon Wheel Park Homeowners Ass'n*, 206 Ariz. 42, 46, ¶ 15 (App. 2003). Improperly executed amendments to deed restrictions "never become effective" and are null and void. *See La Esperanza*, 142 Ariz. at 239 (holding the filing of a new plat was an invalid attempt to amend the declarations because there was no instrument signed by the required number of lot owners); *see also Multari v. Gress*, 214 Ariz.

557, 560, ¶ 19 (App. 2007) (holding deed restrictions invalid for failure to comply with previous declaration); *Shamrock*, 206 Ariz. at 46, ¶ 16 (holding purported amendment to declaration "did not effect a change" in restrictions due to the failure to comply with the declaration's amendment process).

**¶27** To prevail, the Plaintiffs must show the April 1961 Amendment—setting forth the parking and driveway restrictions—is valid and enforceable. *See Payson Sanitary Dist. of Gila Cnty. v. Zimmerman*, 119 Ariz. 498, 502 (App. 1978) (explaining party seeking to enforce a contract has the burden to prove the validity of the contract); *Malcoff v. Coyier*, 14 Ariz. App. 524, 526 (1971) ("The burden is upon the plaintiff to prove all the essential elements of a valid contract."). To meet their burden, the Plaintiffs must establish that the April 1961 Amendment complied with the January 1961 Declaration's requirement that changes to the covenants and restrictions before June 5, 1980 be "agreed to in writing by one hundred per cent (100%) of the then record owners of all said property."

**¶28** The Plaintiffs have not met their burden. The record contains deeds showing two entities, apart from Lane Title, owned lots in the Subdivision before the April 1961 Amendment was recorded. Both recorded deeds state that Lane Title, "the Grantor herein, does hereby convey to . . . the Grantee, the following real property" and described specific lots in the Subdivision. "There is a rebuttable presumption that record title accurately reflects the ownership interest in real property," *Boone v. Grier*, 142 Ariz. 178, 182 (App. 1984), and a deed is documentary evidence of title, *see SWC Baseline & Crismon Invs., L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 280–81, ¶ 29 n.4 (App. 2011).

**¶29** Despite recorded documentation of ownership by two other entities, Lane Title incorrectly claimed in the April 1961 Amendment that it owned all the lots in the Subdivision.[2] The Plaintiffs admit no evidence establishes the veracity of this statement and the record contains no evidence that the other two lot owners gave written consent to the April 1961 Amendment.[3] Because the Plaintiffs did not—and admittedly

---

[2] In an earlier ruling, the superior court recognized the inaccuracy of Lane Title's recital: "The April 1961 amendment recites Lane Title as owner of all the lots, which is not the case."

[3] At oral argument on their motion for summary judgment, the Plaintiffs' attorney stated:

cannot—prove that the April 1961 Amendment complied with the January 1961 Declaration's amendment requirements, the superior court erred in finding the April 1961 Amendment valid and enforceable and in denying Rent-Sell's motion for summary judgment to dismiss the Plaintiffs' amended complaint for declaratory relief. We direct the superior court to enter summary judgment in favor of Rent-Sell. *See Orme School*, 166 Ariz. at 310.

### III. Joinder Requirement

**¶30** Rent-Sell argues the superior court's judgment violates the mandatory joinder requirement of the Uniform Declaratory Judgments Act, citing A.R.S. § 12-1841(A).[4] Because we reverse the court's judgment, we need not address this argument. We deny the Plaintiffs' request to dismiss the appeal based on Rent-Sell's alleged failure to move to join other parties.

### CONCLUSION

**¶31** For the foregoing reasons, we reverse the superior court's declaratory judgment and the underlying summary judgment rulings. We direct the superior court to grant summary judgment to Rent-Sell and dismiss with prejudice the Plaintiffs' amended complaint for declaratory relief. We remand for further proceedings consistent with this decision, in which Rent-Sell may seek its attorney's fees and costs and proceed with litigation on its first amended counterclaim and first amended third-party complaint.

**¶32** We deny the Plaintiffs' request for attorney's fees on appeal. We award Rent-Sell its reasonable attorney's fees under A.R.S. § 12-341.01 and costs upon compliance with ARCAP 21.

---

> We additionally don't know whether that statement made by Lane Title was true on its face or not, because we don't know, *nor will we ever know* who Warren was co-partner with. What we do know is that he bought the land for $10. We know that First National took it as trustee, but *we will never know* who they took that as trustee for.

(Emphasis added.)

[4] Under A.R.S. § 12-1841(A), a party seeking declaratory relief must join as parties all persons "who have or claim any interest which would be affected by the declaration[.]"

**K I L E Y, J.,** dissenting:

¶33        The restrictive covenant at issue in this case is an amendment to a deed-restricted community's governing declaration that was recorded by Lane Title & Trust Company ("Lane Title") in 1961. Public records show that, at the time, Lane Title owned all but two of the affected lots. The other two were owned by C.J. Warren Company ("Warren") and First National Bank ("FNB"). Although nothing on the face of the amendment reflects the approval of Warren or FNB, nothing in the record suggests that they, or anyone else, ever challenged its validity at any point over the next sixty years.

¶34        That changed in 2021, when Steve and Kymberly Westhoff sued their neighbor, Rent-Sell Real Estate, LLC ("Rent-Sell"), to enforce the restriction. Rent-Sell responded that the restriction was invalid because the amendment did not reflect the approval of Warren and FNB, and therefore the Westhoffs could not prove that it had been adopted with the unanimous consent of the affected property owners as required by the declaration. The superior court rejected Rent-Sell's challenge to the validity of the restriction as time-barred. The Majority now reverses, holding that the passage of six decades is no barrier to a challenge to the validity of a recorded deed restriction. In my view, the Majority's holding is not only contrary to case law, but defeats the very purpose of recording and limitation statutes. I respectfully dissent.

¶35        The issue raised in this appeal was previously addressed in *Vales v. Kings Hill Condo. Ass'n*, 211 Ariz. 561 (App. 2005), *abrogated on other grounds by Powell v. Washburn*, 211 Ariz. 553 (2006). In *Vales*, a majority of owners in a condominium community voted to approve a "no rental" amendment to the governing declaration, and the association recorded the amendment. 211 Ariz. at 563, ¶¶ 3-4. Three years later, Vales, who owned a unit that she rented out, brought declaratory relief and other claims against the association, maintaining that the amendment was invalid because it was not adopted unanimously as required by Section 33-1227(D) of the Condominium Act (the "Act"), A.R.S. §§ 33-1201 to -1270. *Id.* at 564, ¶ 6. The superior court dismissed her claims as time-barred, holding that Section 33-1227(B), the Act's statute of repose, required Vales to bring her challenge within one year of the recording of the amendment. *Id.* On appeal, this Court reversed, holding that the Act's statute of repose was inapplicable because the governing declaration, which required only majority consent, was adopted before the Act took effect. *Id.* at 566, ¶ 15.

¶36 The *Vales* court did not, however, hold that Vales's challenge to the amendment was exempt from all statutory time bars. Instead, the Court held that Vales's challenge was timely because her claims were filed "less than four years" after the amendment was recorded, and thus were brought within the four-year limitations period set forth in A.R.S. § 12-550. *Id*. at 566-67, ¶ 17.

¶37 The *Vales* court's recognition that limitations statutes apply to challenges to the validity of recorded documents that amend restrictive covenants is consistent with the purpose of limitations statutes, which is, at least in part, to promote the just resolution of disputes by requiring that claims be brought in a timely manner, before memories fade and evidence becomes unavailable. *See, e.g.*, *Nolde v. Frankie*, 192 Ariz. 276, 279, ¶ 12 (1998) (noting that "[t]he statute of limitations[,]" which "protects defendants and the courts from litigation of stale claims in which plaintiffs have slept on their rights and evidence may have been lost or witnesses' memories faded[,]" is "sound and necessary for the orderly administration of justice" (citation modified)). By requiring that claims be brought before the evidence needed to support or refute them is lost due to the passage of time, limitations statutes protect the integrity of the judicial process. *See Wyckoff v. Mogollon Health Alliance*, 232 Ariz. 588, 591, ¶ 8 (App. 2013) (explaining that a "premise[]" of limitations statutes is "that after too much time has passed . . . it might be impossible to establish the truth" due to the "loss of evidence"(citation modified)); *see also Umpqua Bank v. Gunzel*, 483 P.3d 796, 809, ¶ 33 (Wash. App. 2021) (noting that limitations statutes serve to "ensur[e] that the search for truth is not impaired by the loss of evidence[,] whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise"). Limitations statutes thus reflect the legislature's determination that the right to bring claims, however meritorious they may be, must, after a certain point, yield to the countervailing interest in shielding courts and potential defendants from the burdens and difficulties that attend the litigation of stale claims. *See Schuman v. Ignatin*, 191 Cal. App. 4th 255, 267, 119 Cal. Rpt. 3d 318, 327 (2010) (observing that the "theory" underlying statutory time bars is that one's "right to prosecute" a "just claim" must, over time, yield to the right of one's "adversary" to "be free of stale claims[.]" (citation omitted)).

¶38 *Vales*'s recognition that limitations statutes apply to challenges to the validity of recorded restrictive covenants is also consistent with the purpose of recording statutes like A.R.S. §§ 33-411 *et seq.* By requiring that claimed interests in real property be recorded at the risk of being lost, recording statutes safeguard the property rights and interests not only of current owners, but of prospective purchasers, creditors, and

other third parties. *See* A.R.S. § 33-412(A) (providing that all conveyances of real property "shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law"); *see also Rowe v. Schultz*, 131 Ariz. 536, 539 (App. 1982) (noting "the desirability of encouraging recording and penalizing non-recording of property interests for the protection of all persons involved"); *Vaughn-Leavitt Ltd. P'ship v. U.S. Bank Nat'l Ass'n*, 1 CA-CV 22-0040, 2023 WL 2377711 at *4, ¶ 18 (Ariz. App. Mar. 7, 2023) (mem. decision) ("[T]he purpose of recording a lien is to protect a lienholder's interests not only against those of property owners and other lienholders, but against claims by as-yet-unknown third parties such as judgment creditors, subsequent purchasers, and the like."). Indeed, so important are the interests of third parties that are protected by Arizona's recording statutes that the Arizona Supreme Court has held that a challenge to a recorded deed is subject to a limitations defense even if the deed is alleged to be a forgery. *See Estate of Dominguez v. Dominguez*, 259 Ariz. 404, 412, ¶ 31 (2025) (rejecting argument that a forged deed is "void *ab initio*" and thus exempt from the five-year limitations period set forth in A.R.S. § 12-524, and holding, instead, that limitations statute applies as long as the allegedly forged deed "has all the attributes of a valid deed that conveys real property" and "is recorded with the county recorder.").[5] By depriving the Westhoffs of the benefit of a facially-valid restrictive covenant that was recorded sixty years ago but, as far as the record shows, never challenged until after they bought their lots in Tonto Hills, the Majority's holding defeats the purpose of Arizona's recording statutes. *See Thomas v. Lynx United Grp., LLC*, 159 P.3d 789, 793-94 (Colo. App. 2006) (noting that recording statutes serve "to permit a purchaser to rely on the condition of title as it appears of record." (citation modified)).

¶39        *Vales*'s recognition that limitations statutes apply to challenges to the validity of recorded amendments to restrictive covenants is consistent with the conclusions of courts in a number of other jurisdictions that have addressed the issue. In *Schuman v. Ignatin*, 191 Cal. App. 4th 255, 119 Cal. Rpt. 3d 318 (2010), for example, restrictive covenants governing a subdivision that were due to expire were extended by an amendment that was adopted by a majority of the lot owners and recorded in 1998. Ignatin purchased a lot in the subdivision on which he intended to build a house that would have violated the restrictions. When a neighbor filed suit in 2007 to stop the construction, Ignatin asserted that the

---

[5] The *Estate of Dominguez* court also recognized, however, that the running of the limitations period may be delayed under principles of equitable tolling and the discovery rule. 259 Ariz. at 413, ¶ 37.

restrictive covenants had expired and that the amendment extending them was invalid because it was not adopted unanimously. *Id*. at 260, 119 Cal. Rptr. 3d at 322. The *Schuman* court rejected Ignatin's challenge to the 1998 amendment as time-barred. *Id*. at 267, 119 Cal. Rptr. 3d at 327-28. The reliance interests of Ignatin's neighbors, the *Schuman* court held, made "[a]pplication of the statute of limitations . . . particularly appropriate"; as the Court pointed out, the subdivision's residents had "relied" on the amendment for "almost 10 years" in "purchasing, selling, or retaining their property." *Id*. at 267, 119 Cal. Rptr. 3d at 327.

¶40 Similarly, in *Hilton v. Pearson*, 208 So.3d 108 (Fla. App. 2016), homeowners filed suit in 2013 to challenge, *inter alia*, the validity of an amendment to the subdivision's restrictive covenants that was recorded in 2005. The amendment was "null and void[,]" they contended, because it was not unanimously approved as required by the original restrictive covenants. *Id.* at 109. The Florida Court of Appeals held that the homeowners' challenge was barred by Florida's five-year limitations statute applicable to claims arising out of written contract. *Id.* at 110. "[A] suit challenging the validity of an amendment to restrictive covenants[,]" the *Hilton* court held, "must be filed within five years of the date that the amendment is recorded even if the suit alleges that the amendment was void because it was not properly enacted." *Id.; accord Bilanko v. Barclay Court Owners Ass'n*, 375 P.3d 591, 593, ¶¶ 5, 8 (Wash. 2016) (unit owner brought declaratory relief claim challenging amendment to condominium declaration as void *ab initio* because it was not approved by supermajority of property owners as required by declaration; claim held time-barred); *Dun Huang Plaza Ass'n, Inc. v. SUN9028, Inc*., 693 S.W.3d 811, 818-19 (Tex. App. 2024) (unit owner brought declaratory relief claim challenging amendment to condominium declaration as void *ab initio* because it was not adopted by unanimous vote of unit owners; claim held time-barred). I find this case law persuasive, and see nothing in Arizona law that warrants a different result here.

¶41 In support of its holding, the Majority relies on *La Esperanza Townhome Ass'n, Inc. v. Title Sec. Agency of Ariz*., 142 Ariz. 235 (App. 1984) and *Raimey v. Ditsworth*, 227 Ariz. 552 (App. 2011). I don't believe that either case supports the Majority's holding.

¶42 In *La Esperanza*, the covenants, conditions and restrictions ("CC & Rs") governing a townhouse development were amended without the unanimous consent of the affected property owners to allow some, but not all, of the lots to be used for multi-story housing. *Id.* at 237. Certain unit owners sued to have the amendments declared invalid. After the trial court

held the amendments valid, this Court reversed. Recognizing that amendments to CC & Rs that do not apply uniformly to all lots require unanimous approval of all lot owners, the *La Esperanza* court held that the amendments at issue were "not properly executed[,]" and so "never [became] effective." *Id.* at 239.

**¶43**      The Majority interprets *La Esperanza* as standing for the proposition that an improperly-adopted amendment to a restrictive covenant is void and can be challenged at any time. I think the Majority reads too much into this case. It is unclear, from the opinion in *La Esperanza*, how much time passed between the recording of the disputed amendments to the CC & Rs and the plaintiffs' challenge to them. Further, nothing in the opinion indicates that the defendants asserted a limitations defense to the plaintiffs' challenge. *La Esperanza* does not, therefore, support the Majority's holding that a challenge to a purportedly invalidly-adopted restrictive covenant is exempt from limitations statutes.

**¶44**      *Raimey* was a special action from the superior court's ruling on remand of a prior decision, *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, 51, ¶¶ 15, 40 (App. 2010). In *Dreamland*, a majority of lot owners in a planned community voted to amend the original declarations in a manner that imposed additional financial obligations on lot owners. Some of the lot owners who opposed the amendments asserted claims challenging their validity. *Id.* at 50, ¶¶ 32, 36-37. Noting that the disputed amendments "markedly changed the obligations of the implicated lot owners[,]" the *Dreamland* court held them "invalid and unenforceable," concluding that "51% of the lot owners" were not entitled to "force" those new obligations onto "the other 49%[.]" *Id.*

**¶45**      On remand, the association argued that *Dreamland*'s invalidation of the amendments applied only to the lot owners who were parties to the litigation. According to the association, it could continue to enforce the invalidated amendments against lot owners who did not participate in the litigation because, by failing to file their claims, those lot owners had allowed their claims to become time-barred. *Raimey*, 227 Ariz. at 558, ¶ 16. The superior court agreed, holding that the association could continue to enforce the invalidated amendment as to non-litigant lot owners.

**¶46**      When the affected lot owners sought relief by special action, this Court accepted jurisdiction and granted relief, holding that "the trial court erred when it found that the [amendments] were invalidated only as to homeowners who participated" in the litigation. *Raimey*, 227 Ariz. at 559,

14

¶ 19. The *Raimey* court expressly rejected the association's position that it could continue to enforce the invalidated amendments against non-litigant lot owners because they had allowed their claims to become time-barred by failing to join the litigation. *Id*. at 558, ¶¶ 15-16. To allow the association to continue to enforce the amendments against non-litigant lot owners would, the *Raimey* court held, "contravene[e] . . . the basic principle that all homeowners within a particular subdivision be subject to the same restrictive covenants." *Id*. at 557, ¶ 11.

¶47        In a single sentence, the *Raimey* court observed that if the amendments "are invalid and therefore void, they cannot be confirmed or ratified by the running of the statute of limitations." *Id.* at 558, ¶ 16. The Majority cites this sentence as authority for its holding that because the disputed restriction was not validly adopted in 1961, it is "void" and therefore not subject to "the running of the statute of limitations."

¶48        Again, the Majority reads too much into *Raimey*. The litigant lot owners in *Dreamland* had (as far as the opinion in that case indicates) filed their challenges to the amendments within the applicable limitations period.[6] The issue in *Raimey* was whether the *Dreamland* court's invalidation of the amendments applied to all within the community, or only to those who were parties to the litigation. The *Raimey* court determined that the *Dreamland* court's invalidation of the amendments left them without effect as to any lot owner in the community. *Raimey* thus stands for the proposition that after an amendment to a restrictive covenant is declared invalid upon a timely challenge by one or more of the affected property owners, the amendment is invalid as to all affected property owners, including those who had not challenged it. *Raimey* cannot reasonably be read, however, to hold that limitations statutes are wholly inapplicable to challenges to amendments to restrictive covenants. To the extent that a single sentence in *Raimey* can be read to support such a view, that sentence was *dicta* and therefore not precedential. *See Olewin v. Nobel Mfg., LLC*, 254 Ariz. 346, 351, ¶ 19 (App. 2023).

¶49        In further support of its holding, the Majority cites *National Union Indem. Co. v. Bruce Bros., Inc*., 44 Ariz. 454 (1934) and *Mitchell v. Am.*

---

[6] The *Dreamland* court stated that the disputed amendments were adopted "[i]n 2003 and 2004," that the association began to file suit against non-compliant lot owners "[b]eginning in December 2006," and the lot owners asserted counterclaims alleging that the amendments were void. *Dreamland*, 224 Ariz. at 44, ¶¶ 6-7. Nothing in *Dreamland* indicates that the counterclaims were filed outside the applicable limitations period.

*Sav. & Loan Ass'n*, 122 Ariz. 138 (App. 1979) for the proposition that a void contract can be challenged at any time. These cases are inapposite, however, because they addressed challenges to contracts as void on public policy grounds. *See National Union*, 44 Ariz. at 468 ("It appearing from the record that the contract on which plaintiff seeks to recover was by the public policy of this state declared to be void, no recovery can be had thereon as against any person."); *Mitchell*, 122 Ariz. at 140 (recognizing the principle that "the illegality of a contract may be raised for the first time on appeal[,]" but holding the principle inapplicable because the appellant did not show that "the [disputed] contract [was] illegal"). Because an amendment to a restrictive covenant does not violate public policy merely because it was adopted without the unanimous approval of the affected property owners, *National Union* and *Mitchell* have no application here. *See Bilanko*, 375 P.3d at 595, ¶ 15 (noting that although association improperly adopted amendment to declaration without the support of the required supermajority, the amendment was not void on public policy grounds).

**¶50**         Rent-Sell raises other challenges to the superior court's ruling, including, as the Majority notes, a challenge based on the Westhoffs' purported failure to join necessary parties. *See supra* ¶ 30. Because Rent-Sell did not raise these alternative arguments below, it has not preserved them for review. *See Lansford v. Harris*, 174 Ariz. 413, 419 (App. 1992) ("On appeal from summary judgment, the appellant may not advance new theories or raise new issues to secure a reversal.").

**¶51**         Pursuant to *Vales*, and consistent with the purposes of recording and limitations statutes, I would hold that a challenge to an amendment to a restrictive covenant on the basis that it was not adopted in the manner required by the governing declaration is subject to applicable limitations statutes. I would further hold that, subject to the discovery rule and principles of equitable tolling, the limitations period begins to run when the disputed amendment is recorded. *See Vaughn-Leavitt*, 1 CA-CV 22-0040 at *4-5, ¶¶ 19-20 (holding that cause of action for allegedly wrongful recording of lien release accrued when release was recorded); *see also Costa Serena Owners Coal. v. Costa Serena Architectural Comm.*, 175 Cal. App. 4th 1175, 1196, 97 Cal. Rptr. 3d. 170, 187 (Cal. App. 2009) (holding that planned community's homeowners sustained an injury when improperly-adopted amendments were recorded, and so the "recording of each of the instruments . . . triggered the statutory period for bringing an action to invalidate the [a]mendments"). And because Rent-Sell has never invoked the discovery rule or the doctrine of equitable tolling in opposing the Westhoffs' motion for summary judgment, I would hold that its cause of action accrued in 1961 and so is time-barred under any limitations statute

that could possibly apply. I would, therefore, affirm the court's grant of summary judgment in favor of the Westhoffs.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR